Argued October 10, reversed with instructions October 23, petition for rehearing denied December 17, 1968

MOCK, *Appellant, v.* GEORGIA-PACIFIC CORPORATION, *Respondent.*

446 P. 2d 125

*Ray G. Brown,* Portland, argued the cause for appellant. With him on the brief was Frank B. Reid, Eugene.

*William E. Flinn,* Eugene, argued the cause for respondent. On the brief were Jaqua, Wheatley & Gardner, Eugene.

Before Perry, Chief Justice, and Goodwin, Den-ecke, Holman and Lusk, Justices.

GOODWIN, J.

Plaintiff appeals from a judgment notwithstanding the verdict entered in favor of the employer in an action for damages for personal injuries sustained when a fellow workman set fire to the plaintiff's clothing after the clothing had become soaked in acetone during a scuffle with two other workmen in a plywood manufacturing plant.

As the intentional misconduct of the workman who ignited the plaintiff's clothing was wholly outside the scope of his employment, the employer would not be liable on the theory of *respondeat superior. Davis v. Weyerhaeuser Co.,* 231 Or 596, 604, 373 P2d 985 (1962). See Brill, *Liability of an Employer for the Wilful Torts of His Servants,* 45 Chi-Kent L R 1 (1968). The employer would be liable only if it was guilty of "direct" negligence in one or more of the specifications alleged in the complaint. *Kelley v. Ore. Shipbuilding Corp.,* 183 Or 1, 189 P2d 105 (1948). See cases collected in the Annotation, 8 ALR3d 442 (1966).

The complaint alleged that the employer was negligent in four particulars: (1) failure to select qualified supervisors; (2) failure to supervise the conduct of the employes in the area where plaintiff was required to work; (3) requiring "plaintiff to work among employes with a propensity to engage in horseplay"; and (4) failure to enforce within the plant the provisions of the Basic Safety Code forbidding "horse-play, scuffling, practical jokes or any other activity which will create or constitute a hazard." Or Basic Safety Code § 1.15 (State Ind Acc Com 1949).

The trial court withdrew three of the charges of negligence, and submitted the second, but, after a verdict for the plaintiff, set the verdict aside. While the Safety Code was not mentioned in the specification of negligence submitted to the jury, it was covered elsewhere in the instructions.

The correctness of the judgment n.o.v. turns, therefore, upon an examination of the evidence that the employer was negligent in failing to exercise reasonable supervision of the crew with special reference to the enforcement of the horseplay sections of the Safety Code. On this issue, the plaintiff's evidence tended to prove the following state of facts:

The plaintiff was sixteen years of age at the time of his injuries. He admitted that he wore his hair in a manner that attracted unfavorable reaction on the part of other, older members of the crew. Prior to the episode complained of, fellow workmen had "offered" to cut his hair, had pursued and run into him with a "jitney," and had laid hands upon him more or less violently. On one occasion, the plaintiff climbed on a pile of plywood during the lunch period and went to sleep. When he awoke, he was being paraded through the plant on a fork lift some eight or ten feet off the floor. After one such episode, plaintiff asked to be transferred to a different part of the plant. He was transferred to a different location and worked in the new job for six days before he was injured. On the new job the plaintiff encountered renewed horseplay. Most of the plaintiff's abuse from his fellows consisted of such nondangerous diversions as stuffing putty in the plaintiff's trousers, placing sanitary napkins in his lunch pail, and the like. On the night of his injury, however, he was pursued by two men who "cornered" him and "grabbed" him. During the en-

suing scuffle, two containers of acetone were tipped over, and the fluid soaked his clothing. While he was attempting to dry himself, a fellow workman thought it would be interesting to see what would happen if he lit his cigaret lighter and held it to the plaintiff's clothing.

As the trial judge observed while overruling a motion for an involuntary nonsuit at the close of the plaintiff's evidence, at least three of the acts of horseplay described in the testimony as antedating the injury were of the very sort the Safety Code was intended to prevent: the hoisting on the fork lift, the intentional running down with the jitney, and fistic aggressions by fellow workmen.

■ We hold that the evidence, as a whole, was sufficient to permit the jury to draw the inference that the defendant did not properly supervise its workmen with specific reference to the enforcement of the horseplay sections of the Safety Code. The jury could have found that this failure of supervision constituted negligence on the part of management. The lead men in the plant had the authority to report horseplay, and when they did report such conduct, the conduct stopped. No one in authority attempted to stop the horseplay that preceded the plaintiff's injuries. The jury could draw the inference that the lead men associated with the plaintiff's work were ignorant of the need to enforce safety regulations, or were indifferent to the safety of the plaintiff. The jury could have found that the supervisors failed to exercise reasonable supervision over the crew to prevent dangerous horseplay. When given the case, the jury so found. Since the evidence was sufficient to support that verdict, it was error to set aside the verdict and enter judgment n.o.v.

In *Davis v. Weyerhaeuser Co.*, supra, a nonsuit was affirmed, but in that case there was no evidence of dangerous horseplay antedating the plaintiff's injury. A workman pushed Davis so that he fell backward. While the injurious act was characterized by this court as a relatively nondangerous act, the case turned on the failure of Davis to prove that the employer had any reason to anticipate and take precautions to prevent dangerous horseplay on the part of the crew. In *Kelley v. Oregon Shipbuilding Corp.*, supra, the action likewise was unsuccessful because the plaintiff failed to prove negligence and proximate cause, not because the theory of liability for direct negligence was not applicable.

In the case at bar, the evidence showed a pattern of indifferent supervision with specific reference to dangerous horseplay. The evidence permitted an inference that the employer in the exercise of reasonable supervision should have known of the necessity for the exercise of reasonable control, and should have taken steps to prevent or reduce the likelihood of dangerous sport by the members of the crew.

Reversed with instructions to enter judgment on the verdict.